UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| MARSHALL G. HILES, Individually and as Assignee of the Claims of Nathan and Brittney Honis, | : : : : | Case No. 1:12-cv-392 |
| Plaintiff, | : : | Judge Timothy S. Black |
| vs. | : : | |
| NOVASTAR MORTGAGE, INC., *et al.*, | : : : | |
| Defendants. | : | |

**DECISION AND ENTRY: (1) GRANTING DEFENDANTS' MOTION TO DISMISS (Doc. 15); and (2) TERMINATING THIS CASE FROM THE DOCKET OF THE COURT**

This civil action is before the Court on Defendants' motion to dismiss the Complaint (Doc. 15), and the parties' responsive memoranda (Docs. 18, 21).

**I.    GENERAL BACKGROUND**

Plaintiff Marshall G. Hiles, both individually and as an assignee of Nathan and Brittney Hoins, has sued four different defendants, including NovaStar Mortgage, Inc., NovaStar Financial, Inc.,[1] and Zurich American Insurance Company.[2] The Honsises purchased Plaintiff's father's home and Plaintiff alleges that he was involved in the sale as his father's attorney-in-fact. Plaintiff alleges that he worked with the mortgage broker

---

[1] NovaStar Financial, Inc. is now known as Novation Companies, Inc.

[2] Plaintiff does not assert any claims against Zurich and has joined it as a nominal party in this action, presumably because it is the "holder[] of a bond in favor of NovaStar Mortgage." (Doc. 7 at ¶ 11).

Kenneth Willman to sell his father's home and that the Honises obtained a loan through Willman and his company, Finish Line Mortgage, Inc. (Doc. 7 at ¶¶ 13-16).

NovaStar Mortgage funded the loan and received the first mortgage payments from the Honises. (Doc. 7 at ¶¶ 20, 25). The Honises' home was foreclosed in 2008 in an action brought by Deutsche Bank, which had ultimately become the holder of the mortgage. (*Id.* at ¶¶ 29, 32). Plaintiff claims he was a party to that foreclosure action and that "through his pleadings, [he] attempted to bring the facts and circumstances of [Willman's] fraudulent acts related to the mortgage to the court's attention." (*Id*. at ¶ 30).

On May 25, 2011, nearly three years after their home was foreclosed upon, the Honises formally assigned whatever rights they had relating to that foreclosure and the underlying mortgage to Plaintiff. (Doc. 7, Ex. F). After the foreclosure, Plaintiff filed suit on behalf of the Honises against the mortgage broker, Willman, in Ohio state court and obtained a default judgment against him in 2010. (*Id.* at ¶¶ 34, 35, 37). Now Plaintiff is attempting to use that assignment and the default judgment against NovaStar Mortgage and Novation.

## II.    FACTS ALLEGED <u>BY THE PLAINTIFF</u>

For purposes of this motion to dismiss, the Court must: (1) view the Complaint in the light most favorable to Plaintiff; and (2) take all well-pleaded factual allegations as true. *Tackett v. M&G Polymers*, 561 F.3d 478, 488 (6th Cir. 2009).

On June 25, 2008, Deutsche Bank National Trust Company, as Trustee under Novastar Mortgage Funding Trust, Series 2007-1 c/o Saxon Mortgage Services Inc., filed a complaint in foreclosure in Hamilton County Common Pleas Court against the Honises. (Doc 7 at ¶ 29). Plaintiff Hiles was a party to the foreclosure action due to the promissory note executed by the Honises. (*Id.* at ¶ 30). During foreclosure proceedings, Plaintiff Hiles began an investigation which allegedly revealed that fraudulent representations were made to him and the Honises during the transaction with NovaStar. (*Id.* at ¶ 31). Nathan Honis then had a relapse of Post-Traumatic Stress Disorder during which time he separated from his wife and child. (*Id.* at ¶ 26). Mr. Honis ultimately was unable to cope, so he abandoned the property and moved in with his parents in New York. (*Id.* at ¶ 27). The Honises were unable to secure representation of counsel on their behalf, and they did not appear in the foreclosure action. (*Id.* at ¶ 32). Subsequently, the foreclosure was granted and the property was sold. (*Id.*) Based on the financial and emotional inability of the Honises to defend themselves in the foreclosure action, and to pursue the parties who committed the allegedly fraudulent acts against them, the Honises assigned their claims to Plaintiff. (*Id.* at ¶ 33).

On May 25, 2011, three years after their home was foreclosed, the Honises formally assigned whatever rights they had relating to that foreclosure and the underlying mortgage to Plaintiff. (Doc. 7, Ex. A). After the foreclosure, Plaintiff filed suit against the mortgage broker Willman in Ohio state court on behalf of the Honises and obtained a default judgment against him in 2010. (*Id.* at ¶¶ 34, 35, 37).

Plaintiff alleges claims for fraud (Count I), violation of the Ohio Mortgage Broker Act ("OMBA") (Count II), and improper foreclosure (Count III). Plaintiff asserts these claims both individually and as the Honises' assignee.

### III. STANDARD OF REVIEW

#### A. Fed. R. Civ. P. 12(b)(1)

Where a defendant raises the issue of lack of subject matter jurisdiction under Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion to dismiss. *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990). "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

Motions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). A facial attack on subject matter jurisdiction goes to whether the plaintiff has properly alleged a basis for subject matter jurisdiction, and the trial court takes the allegations of the complaint as true. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). Here, Defendants attack the facial sufficiency of the complaint, thus the applicable standard of review is that employed under Rule 12(b)(6). *Id*.

#### B. Fed R. Civ. P. 12(b)(6)

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) operates to test the sufficiency of the complaint and permits dismissal of a complaint for "failure to state a

claim upon which relief can be granted." To show grounds for relief, Fed. R. Civ. P. 8(a) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

While Fed. R. Civ. P. 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, -- U.S. --, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). Pleadings offering mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do." *Id*. (citing *Twombly*, 550 U.S. at 555). In fact, in determining a motion to dismiss, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation[.]" *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265 (1986). Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Id*.

Accordingly, in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949. A claim is plausible where "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. (citing Fed. Rule Civ. Proc. 8(a)(2)).

## IV. ANALYSIS

### A. Standing

Plaintiff lacks standing to sue individually because: (1) he has no cognizable damages; and (2) he cannot proceed as an assignee because the assignment is void as a matter of law under the doctrines of champerty and maintenance.

#### 1. *Injury/Damages*

In order to demonstrate standing, Plaintiff must allege a "personal injury fairly traceable to the defendant's allegedly unlawful conduct." (Doc. 18 at 3) (quoting *Fair Hous. Council, Inc. v. Vill. of Olde St. Andrews, Inc*., 210 F. App'x 469, 471 (6th Cir. 2006)). However, Plaintiff's purported injury is not traceable to Defendants' conduct.

Plaintiff claims that Defendants should have "investigated" discrepancies in the Honises' loan application, including the different purchase prices listed on the loan application and the contract that Plaintiff executed with the Honises.[3] (Doc. 7 at ¶¶ 20). According to Plaintiff, the Honises needed to borrow money from him because NovaStar Mortgage "failed to account" for the Honises' down payment and then "allowed" Willman and Finish Line "to secure a second note" in favor of Plaintiff in the amount of $7,500. (*Id*. at ¶ 49). Based on these conclusory allegations, Plaintiff claims that had NovaStar Mortgage "acted properly," the purchase price would not have been inflated, the Honises' down payment would have been accounted for, the note in favor of Plaintiff

---

[3] Specifically, the purchase price listed on the loan application was $90,500, but the purchase agreement stated that the purchase price was $85,900. (Doc. 7, Ex. B)

would not have been necessary, and Plaintiff would not have suffered a loss.[4] (*Id.* at ¶¶ 20, 49). However, the Court concludes that the facts do not support these inferences.

Plaintiff's decision to make the second mortgage loan was his independent action and was not caused by NovaStar. Plaintiff had the choice to determine whether to make a secondary loan to the Honises and he chose to complete the sale and accept a promise to pay $7,500, rather than insist upon immediate payment and possibly halting the sale. The allegations show that Plaintiff's injury was caused by the Honises' failure to satisfy the terms of the note they executed in Plaintiff's favor. (Doc. 7 at ¶¶ 20, 49). The Honises' failure to repay Plaintiff resulted from Mr. Honis's alleged relapse of PTSD, his loss of work, and his decision to abandon the property. (*Id.* at ¶¶ 26-29). Thus, here, the Plaintiff fails the test articulated by the United States Supreme Court: At an "irreducible constitutional minimum," the party invoking the court's authority must show that his alleged injury is "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

---

[4] Plaintiff did not recover the $7,500 promissory note he gave the Honises when the foreclosure was ordered because the property sold for approximately $50,000 and all money went to Deutsche Bank. Therefore, Plaintiff alleges the injury was the loss of $7,500.00. (Doc. 7 at ¶¶ 20, 49).

Accordingly, Plaintiff fails to allege what injury he incurred by virtue of the Defendants' conduct. Moreover, it is nonsensical that Plaintiff, as the seller's representative, was injured by the buyer's lender in a real estate transaction. Thus, Plaintiff lacks standing to sue individually because he has no cognizable damages attributable to the Defendants.

### 2. Assignee

Plaintiff also lacks standing to sue Defendants as the Honises' assignee because that assignment is void under Ohio law, which prohibits maintenance and champerty.

Maintenance is "assistance to a litigant in pursuing or defending a lawsuit provided by someone who does not have a bona fide interest in the case." *Rancman v. Interim Settlement Funding Corp.*, 789 N.E.2d 217, 219 (Ohio 2003). Champerty is "a form of maintenance in which a nonparty undertakes to further another's interest in a suit in exchange for a part of the litigated matter if a favorable result ensures." *Id.* Ohio's public policy against champerty and maintenance is long-standing. *Id.* at 220 (noting that champerty and maintenance "have been vilified in Ohio since the early years of our statehood"). "The doctrines of champerty and maintenance were developed at common law to prevent officious intermeddlers from stirring up strife and contention by vexatious and speculative litigation which would disturb the peace of society, lead to corrupt practices, and prevent the remedial process of the law." *Id.* at 219-220. Champertous assignments are void because Ohio does not want to "prevent litigants from compromising, or settling their controversies." *Id*. at 220.

-8-

Plaintiff seeks to bring the lawsuit as the assignee of the Honises' rights related to their mortgage and subsequent foreclosure of the property.  The assignment transfers "to Marshall Gary Hiles, all of our right, title, and interest in and any claims[,] demands, and causes of action" and allows Hiles to "prosecut[e], assert[], litigat[e], and retain[] counsel" on the Honises' behalf.  (Doc. 7, Ex. A).  Further, only "[i]n the event any payments are received for any claims made by this Assignment, [] [Plaintiff] agrees that he will promptly transmit such payment to [the Honises] after deducting any losses or expenses incurred in the purchase transaction and obtaining such payment."  (*Id.*)

The Court finds that the assignment was improper because an agreement is void when the assignee "agreed to pay the costs associated" with pursuing the legal action, while having no bona fide interest in the case (maintenance), or when the assignee "would receive a stake" in the assignors' claims (champerty).  *Rancman*, 789 N.E.2d at 220.  Contracts involving champerty or maintenance are void as a matter of public policy in Ohio.  *Id.* at 219.[5]

Accordingly, the Court finds that Plaintiff lacks standing to sue individually because he has no cognizable damages and his assignment is void.

---

[5] Moreover, the Honises' fraud claim was extinguished when the foreclosure action was concluded and no appeal was taken.  *See* 69 Oh. Jur. 3d, Mortgages and Deeds of Trust, § 366 ("the judgment in a foreclosure suit concludes the mortgagor from subsequently asserting matters that could have been alleged as defenses in that action[.]").  Therefore, the Honises did not have claims to assign in the first place.

### B. Failure to State a Claim

Even if Plaintiff had standing, his fraud claim fails because it is barred by the statute of limitations, and lacks the requisite specificity in alleging the claim, including its deficient agency allegations.

#### 1. *Statute of Limitations*

Under Ohio law, the statute of limitations for fraud is four years. Ohio Rev. Code § 2305.09(c). The Honises' loan transaction closed on January 4, 2007. (Doc. 7 at ¶ 21). The Honises were therefore required to bring any fraud-based claims on or before January 4, 2011. This civil action was filed in the Hamilton County Court of Common Pleas on April 18, 2012, over one year after the statue of limitations had run.

Plaintiff argues that neither he nor the Honises knew of Defendants' alleged fraudulent conduct until some time after the filing of the foreclosure on June 26, 2008. "The 'discovery rule' generally provides that a cause of action accrues for purposes of the governing statute of limitations at the time when the plaintiff discovers or, in the exercise of reasonable care, should have discovered the complained of injury." *Investors REIT One v. Jacobs*, 546 N.E.2d 206, 209 (Ohio 1989). However, customers are not "free to ignore" information that would cause a reasonable person to investigate or ask questions. *Cragget v. Adell Ins. Agency*, 635 N.E.2d 1326, 1333 (Ohio Ct. App. 1993). Plaintiff argues that Mr. Honis's relapse of PTSD made it impossible for him to discover the

injuries,[6] but fails to explain why Mrs. Honis was unable to discover the alleged injuries. (Doc. 18 at 7).

Ultimately, the Court finds that there was sufficient evidence from which the Honises should have been alerted to the alleged fraud in their mortgage transaction. Specifically, the alleged fraud, not accounting for the down payment and the alleged forgery of Mr. Honis's signature, was contained within the very documents that the Honises received during the loan transaction and that Plaintiff attached to the Complaint. The Honises were not "free to ignore" information made available to them at the time of their loan transaction that would have caused a reasonable person to investigate or ask questions.

Therefore, Plaintiff's fraud claim is barred by the statute of limitations.

### 2.     *Requisite fraud allegations*

Even if Plaintiff's fraud claims were not barred by the statute of limitations, Plaintiff still fails to state a claim for fraud.  Plaintiff does not accuse Defendants of having made any fraudulent representations to either him or the Honises.  Rather, Plaintiff attempts to bootstrap allegedly fraudulent acts of the mortgage broker, Willman, to NovaStar Mortgage by claiming that Willman was "acting as an agent on behalf of NovaStar."  (Doc. 7 at ¶ 38).  However, the allegations of fraud are inadequate.

---

[6] Plaintiff fails to disclose this allegation in the Complaint.

-11-

### a. **Willman as NovaStar's agent**

Plaintiff alleges that "Willman, as the loan officer of Finish Line, was acting as an agent on behalf of NovaStar [Mortgage]." (Doc. 7 at 38). Plaintiff presents no factual allegations that NovaStar Mortgage had an agency relationship with Willman.[7] Rather, Plaintiff identifies a computer-generated letter as the basis of his claim of agency. (Doc. 7, Ex. C). However, that letter does not contain the word agency or make any factual representations that either Willman or Finish Line was serving as an agent of NovaStar Mortgage.[8]

---

[7] In Ohio, and agency relationship is a "consensual fiduciary relationship between two persons where the agent has the power to bind the principal by his actions, and the principal has the right to control the actions of the agent." *Midkiff v. Adams Cnty. Reg'l Water Dist.*, 409 F.3d 758, 767 (6th Cir. 2005).

[8] In the letter, NovaStar states that Plaintiff should "direct any questions [regarding the mortgage or mortgage contract] to your loan representative." (Doc. 7, Ex. C). Plaintiff alleges that this letter is evidence that Willman and Finish Line were given the authority by NovaStar to speak on its behalf and thus they had "the power to bind the principal by his actions." *Midkiff*, 409 F.3d at 767. Plaintiff alleges that NovaStar knew and intended that the Honises would rely on the representations of Willman and Finish Line as well as the loan documents from NovaStar. However, the letter proves the opposite of what Plaintiff claims. *Kosik v. Banc One Ins. Agency, Inc.*, No. 3:07cv2788, 2008 U.S. Dist. LEXIS 108001, at *7 (N.D. Ohio Apr. 28, 2008) (dismissing fraud claim because plaintiff's sole factual allegation was "contradicted directly by facts which can be gleaned from the Complaint and papers integral to the Complaint"). The letter begins, "You are currently working with FINISH LINE MORTGAGE to obtain a loan from NovaStar Mortgage, Inc." (Doc. 7, Ex. C). The letter further states that NovaStar Mortgage "appreciate[d]" the Honises' business and then instructs the Honises to direct questions to "your" – i.e., the Honises' – loan representative. (*Id*) The letter suggests that Willman and Finish Line served as the Honises' agents when they applied for a loan from NovaStar Mortgage. NovaStar Mortgage simply noted that the Honises were working with Finish Line as their "loan representative" to obtain a loan from NovaStar Mortgage. By instructing the Honises to direct questions to their loan representative, NovaStar Mortgage was acknowledging that Willman/Finish Line had the authority to act on the Honises' behalf. In fact, the Complaint alleges that Willman and Finish Line "initiated the loan application process with NovaStar [Mortgage] on behalf of the Honises." (*Id.* at ¶ 19).

Ohio law defines an agency relationship as a "consensual fiduciary relationship between two persons where the agent has the power to bind the principal by his actions, and the principal has the right to control the actions of the agent." *Midkiff v. Adams Cnty. Reg'l Water Dist.*, 409 F.3d 758, 767 (6th Cir. 2005). To establish an agency relationship, a plaintiff must provide facts: "(1) [t]hat the principal held the agent out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority, and (2) that the person dealing with the agent knew of the facts and acting in good faith has reason to believe and did believe that the agent possessed the necessary authority." *ABS Indust., Inc. v. Fifth Third Bank*, 333 F. App'x 994, 999 fn. 4 (6th Cir. 2009). Plaintiff's allegation that NovaStar Mortgage "controlled the process of the loan application" does not provide the necessary detail to survive a motion to dismiss or make sufficient allegations to sustain a fraud allegation based on agency. The letter alone does not establish an agency relationship.

      **b.**     **Plead with particularity**

Additionally, Plaintiff's fraud allegations are not pled with the requisite particularity. The only allegations in the Complaint are that there were "fraudulent acts" in the loan application process. (Doc. 7 at ¶¶ 30, 37). Rule 9(b) requires pleading the time, place, and content of the misrepresentation. *Yuhasz v. Brush Wellman*, 341 F.3d 559, 563 (6th Cir. 2003). Moreover, there is no allegation of intent to deceive on the part of the Defendants. Accordingly, Plaintiff has failed to allege fraud with particularity, as

required pursuant to Fed. R. Civ. P. 9(b).

Therefore, Plaintiff's fraud claim fails as a matter of law.

### C.    OMBA Claim

Plaintiff alleges that NovaStar Mortgage was required to abide by the terms of Ohio Revised Code § 1322.081(A) and that NovaStar Mortgage violated those requirements in violation of the OMBA. (Doc. 7 at ¶¶ 47, 49). In the Honises' transaction, NovaStar Mortgage was neither a loan originator nor a mortgage broker.

#### 1.    *Loan Originator*

The OMBA defines a "loan originator" as an "individual" who does any of the following:

(a)    Takes or offers to take a residential mortgage loan application;
(b)    Assists of offers to assist a buyer in obtaining or applying to obtain a residential mortgage loan by, among other things, advising on loan terms, including rates, fees, and other costs:
(c)    Offers or negotiates terms of a residential mortgage loan;
(d)    Issues or offers to issue a commitment for a residential loan to a buyer.

Ohio Rev. Code § 1322.01(E)(1). Plaintiff does not allege that NovaStar Mortgage performed any of those activities in the Honises' transaction. To the contrary, the Complaint indicates that Willman and Finish Line Mortgage, Inc. took the loan application. (Doc. 7 at ¶¶ 19-20).

Moreover, the definition specifically refers to an "individual." Although the term

"individual" is not defined by statute, at least one court has held that the term "loan originator" applies only to loan officers employed by a mortgage broker. *Girgis v. Countrywide Home Loans*, 733 F.Supp. 2d 835, 850 (N.D. Ohio 2010). Therefore, NovaStar does not qualify as a "loan originator" under the statute.

### 2. *Mortgage Broker*

The OMBA exempts entities from the statute's definition of mortgage broker if that entity "makes residential loans and receives a scheduled payment on each of those mortgage loans." Ohio Rev. Code § 1322.01(G)(2)(a). Because NovaStar Mortgage received a scheduled payment on the Honises' loan, NovaStar Mortgage qualifies as a lender, not a "mortgage broker" under the OMBA. *Girgis*, 733 F.Supp. 2d at 850 (holding that a mortgage company was a lender, rather than a "mortgage broker," because the company "ma[de] residential mortgage loans and receive[d] a scheduled payment on each of those mortgage loans") (quoting Ohio Rev. Code § 1322.01(G)(2)(a)).

The OMBA defines a "mortgage broker" as a person that either (a) holds himself out as being able to assist buyers in obtaining a mortgage, or (b) solicits financial and mortgage information from the public and provides that information to mortgage brokers, and, in either instance, receives consideration for those services. Ohio Rev. Code § 1322.01(G). Plaintiff does not allege that NovaStar Mortgage did either of these activities in the Honises' loan or received any consideration from the Honises for these activities. *See, e.g., State v. Quick*, 2009-Ohio-2124, at ¶ 39 (Ohio Ct. App. May 7, 2009)

("By failing to prove that [the defendant] received money or other consideration for brokering the mortgage, the [plaintiff] failed to show that [the defendant] was a 'mortgage broker' as defined by [the statue].").

The sole fact that NovaStar had a mortgage-broker license, does not a mortgage broker make.[9]  Plaintiff fails to allege that NovaStar Mortgage engaged in any conduct with respect to the Honises' loan that would fit within the definition of a "mortgage broker" under the OMBA.  In fact, the factual allegations reveal that NovaStar Mortgage was the Honises' lender.  For example, Plaintiff alleges the Honises executed a mortgage and note with NovaStar Mortgage and then made payments to NovaStar Mortgage.  (Doc. 7 at ¶¶ 24-25, 39).  Therefore, while Plaintiff asserts in conclusory fashion that Plaintiff was a "mortgage broker" (*Id.* at ¶¶ 44, 47), he also alleges that NovaStar Mortgage acted as a "mortgage lender."  (*Id.* at ¶ 44).  The OMBA specifically excludes companies that lend money and receive the first payment on that mortgage loan.  Ohio Rev. Code § 1322.01(G)(2)(a).

Therefore, the OMBA is inapplicable to NovaStar Mortgage and Plaintiff's claim fails as a matter of law.

---

[9] Plaintiff alleges that NovaStar was registered as a mortgage broker with the Ohio Division of Financial Institutions, License number MB.802893, at all times during the sale and purchase of the property.  (Doc. 7 at ¶ 47). Plaintiff maintains that by applying for and maintaining this license, NovaStar deemed itself a "mortgage broker" and the state of Ohio held them out as such.

**D.**     ***Res Judicata***

Even if the Court held that this case could proceed on all other grounds, it must be dismissed under the doctrine of *res judicata*.

For the same reasons discussed in this Court's contemporaneous Order at Section IV, the doctrine of *res judicata* bars Plaintiff's claims against the remaining Defendants. (*See* Doc. 24 at 6). All conditions of the *res judicata* test are satisfied: (1) an entry of a decree in foreclosure is a final and appealable decision on the merits;[10] (2) the action involves the same parties;[11] (3) Plaintiff's claim was litigated in the foreclosure suit;[12] and (4) both suits involve the same transaction or occurrence – namely the Honises' mortgage. Therefore, this Court is bound to give full faith and credit to the Ohio state court's decision in this matter.

---

[10] As explained in this Court's contemporaneous Order, the fact that the case resulted in a default judgment does not change anything. *Daneman v. Fed. Home Loan Mortg. Corp.*, 187 B.R. 190, 195 (S.D. Ohio 1995) ("A judgment by default rendered in a foreclosure action is just as conclusive on persons properly made parties thereto as any other form of judgment").

[11] Plaintiff and Deutsche Bank were parties to the foreclosure action, and because NovaStar Mortgage was the prior holder of the mortgage, NovaStar Mortgage was in privity with Deutsche Bank. (Doc. 7 at ¶ 29).

[12] Plaintiff admits that he raised "the facts and circumstances of the fraudulent acts related to the mortgage to the court's attention" "through his pleadings" in that very foreclosure action. (Doc. 7 at ¶ 30). However, those claims of fraud were necessarily rejected as "the foreclosure was granted and the property sold." (*Id.* at ¶ 31).

## V.  CONCLUSION

Accordingly, for the reasons stated above, Defendants' motion to dismiss with prejudice (Doc. 15) is **GRANTED**.  Defendants NovaStar Mortgage Inc., NovaStar Financial, Inc., and Zurich America Insurance Company are terminated as parties to this civil action, and as no Defendants remain, this case is **TERMINATED** on the docket of the Court.

  **IT IS SO ORDERED**.

Date:  10/10/2012              *s/ Timothy S. Black*
                             Timothy S. Black
                             United States District Judge